# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| GABRIEL CASSELL, | CASE NO. 10-4981 (JRT/TNL) |
| PLAINTIFF, | |
| V. | |
| THE COUNTY OF RAMSEY, RAMSEY COUNTY DISTRICT COURT ADMINISTRATION, RAMSEY COUNTY GUARDIAN AD LITEM PROGRAM, RAMSEY COUNTY CHILD SUPPORT ENFORCEMENT, SUSAN GAERTNER, Ramsey County Attorney, ATTORNEY AUTUMN TOMKINS, JOAN FITZGERALD, CHIEF JUDGE KATHLEEN GEARIN, JUDGE JOHN T. FINLEY, JUDGE STEVEN D. WHEELER, JUDGE EDWARD J. CLEARY, JUDGE M. MICHAEL MONAHAN, JUDGE GEORGE T. STEPHENSON, JUDGE DALE B. LINDMAN, JUDGE JOHN VAN DE NORTH, JUDGE DIANE ALSHOUSE, REFEREE CHARLES H. WILLIAMS, JR., REFEREE MARY E. MADDEN, MAGISTRATE BRAD A. JOHNSON, MAGISTRATE COLIA F. CEISEL, OLIVIA JASSAH CASSELL, ATTORNEY JULIE L. LA FLEUR, ATTORNEY AMANDA L. HAGEN, and HANSEN DORDELL BRADT ODLAUG & BRADT, PLLC, | **REPORT** **&** **RECOMMENDATION** |
| DEFENDANTS. | |

Gabriel Cassell, 521 Beech Street, Pottstown, PA 19464, *pro se* Plaintiff;

Thomas E. Ring, **RAMSEY COUNTY ATTORNEY'S OFFICE**, 50 Kellogg Boulevard West, Suite 560, Saint Paul, MN 55102-1556, for Defendants the County of Ramsey, Ramsey County Child Support Enforcement, Susan Gaertner, Attorney Autumn Tomkins, and Joan Fitzgerald;

John S. Garry, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101-2128, for Defendants Ramsey County District Court Administration, Ramsey County Guardian Ad Litem Program, Chief Judge Kathleen Gearin, Judge John T. Finley, Judge Steven D. Wheeler, Judge Edward J. Cleary, Judge

M. Michael Monahan, Judge George T. Stephenson, Judge Dale B. Lindman, Judge John Van De North, Judge Diane Alshouse, Referee Charles H. Williams, Jr., Referee Mary E. Madden, Magistrate Brad A. Johnson, and Magistrate Colia F. Ceisel;

Marcus A. Jarvis, **JARVIS & ASSOCIATES, PC**, 13630 Oakwood Curve, Burnsville, MN 55337, for Defendant Olivia Jassah Cassell; and

Barry A. O'Neil and Nicholas A. Dolejsi, **LOMMEN, ABDO, COLE, KING & STAGEBERG, PA**, 80 South 8th Street, Suite 2000, Minneapolis, MN 55402, for Defendants Attorney Julie L. La Fleur, Attorney Amanda L. Hagen, and Hansen Dordell Bradt Odlaug & Bradt, PLLC.

## I.     INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on the Motion to Dismiss of State Defendants (DOCKET NO. 6); the County Defendants' Motions to Dismiss (DOCKET NOS. 15 and 44); the Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants' Motions to Dismiss (DOCKET NOS. 18 and 40); and the Motion to Dismiss of Defendant Olivia Cassell.  DOCKET NO. 33. These actions have been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). DOCKET NOS. 26, 37, 49. A hearing was held on the motions on August 10, 2011. Plaintiff appeared *pro se*.  Tom Ring appeared on behalf of the County Defendants. John S. Garry appeared on behalf of the State Defendants. Marcus A. Jarvis appeared on behalf of Defendant Olivia Jassah Cassell. Barry A. O'Neil appeared on behalf of the Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants.

Based upon the record, memoranda, and oral arguments, **IT IS HEREBY RECOMMENDED** that Defendants' Motions to Dismiss (DOCKET NOS. 6, 15, 18, 33, 40, and 44) be **GRANTED**; Plaintiff's Complaint (DOCKET NO. 1) be **DISMISSED WITH PREJUDICE**; and **JUDGMENT BE ENTERED**.

## II.   BACKGROUND

### a.  Plaintiff Cassell's Complaint

Plaintiff Gabriel Cassell's *pro se* 122-page Complaint alleges a five-year conspiracy by 24 Defendants (acting in their individual and official capacities) to infringe Plaintiff Cassell's rights within the context of a child-support and -custody proceeding in the state district court of Ramsey County, Minnesota, formally named, the Second Judicial District of the State of Minnesota. Docket No. 1; *see generally Cassell v. Cassell,* 2011 WL 781225, Nos. A10-1085, A10-1524 (Minn. App. Mar. 8, 2011); *Cassell v. Cassell,* 2008 WL 2651425, No. A07-1655 (Minn. App. July 8, 2008), *rev. denied* (Minn. Sept. 23, 2008).   In summary, Plaintiff Cassell alleges as follows: Defendant Olivia Jassah Cassell and the Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants wrongfully initiated a child-support and -custody proceeding; the State Defendants (consisting of the state agencies and judicial officers) wrongfully conspired with Defendant Cassell and the Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants to conduct the child-support and -custody proceedings in an unlawful manner and enter unlawful orders; and the County Defendants (consisting of the Child Support Enforcement Division and county attorneys) conspired with the other Defendants to participate in the unlawful child-support and -custody proceedings and enforce the unlawful orders.   In essence, Plaintiff Cassell's Complaint alleges that the proceedings were unlawful because Plaintiff Cassell and Defendant Cassell's minor child resided in Anoka County, Minnesota, and not Ramsey County, at the time the child-support and -custody proceeding commenced.

To the extent necessary, more specific factual allegations will be discussed in the Analysis section of this Report and Recommendation. For purposes of this Report and Recommendation, this Court assumes all of Plaintiff Cassell's factual allegations are true. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 569 F.3d 383, 387 (8th Cir. 2009).

Based upon his allegations, Plaintiff Cassell asserts the following claims:

| Cause of Action | Claims listed under Cause of Action |
|:---:|:---|
| 1 | Violation of 42 U.S.C. § 1983 and Minnesota Law "Conspiracy to Initiate and Sustain Custody and Support in the Absence of Jurisdiction" |
| 2 | Conspiracy in violation of 42 U.S.C. § 1983 and Minnesota Law "Fraudulent [sic] Induce Plaintiff" |
| 3 | Conspiracy in violation of 42 U.S.C. § 1983 and Minnesota Law "Unlawful Usurpation of Authority of Anoka County" "Judicial Kidnapping" |
| 4 | Conspiracy in violation of 42 U.S.C. § 1983, Minnesota Law, and Minnesota Rules of Professional Conduct Fraudulent/Intentional Misrepresentation |
| 5 | Conspiracy in violation of 42 U.S.C. § 1983, Minnesota Law, and Minnesota Rules of Professional Conduct "Aiding and Abetting Fraudulent/Intentional Misrepresentation" |
| 6 | Conspiracy in violation of 42 U.S.C. § 1983, Minnesota Law, and Minnesota Rules of Professional Conduct "Writing and Submission of False Affidavits" |
| 7 | Conspiracy in violation of 42 U.S.C. § 1983, Minnesota Law, and Minnesota Rules of Professional Conduct Malicious Slander False Accusations Blackmail Innuendos Intimidation Threats |
| 8 | Violation of 42 U.S.C. § 1983 "Unlawful Concealing Evidence" |
| 9 | "Fabrication of False Evidence in violation of 42 U.S.C. § 1983" |
| 10 | "Making False State [sic] Plaintiffs in violation of 42 U.S.C. § 1983" |
| 11 | Conspiracy in violation of 42 U.S.C. § 1983 and Minnesota Law "Wrongful/Illegal Imposition of Retroactive Support Obligation" |

| | |
|---|---|
| 12 | Violation of 42 U.S.C. § 1983<br>*Monell v. Dept of Social Services*, 436 U.S. 658 (1977) |
| 13 | "Supervisory Violations of 42 U.S.C. § 1983" |
| 14 | "Conspiracy in Violation of 42 U.S.C. § 1983"<br>Unlawful Reinstatement of Reversed Support Obligations |
| 15 | Conspiracy in Violation of 42 U.S.C. § 1983<br>Unlawful inclusion of Plaintiff's Spouse in Support Obligation |
| 16 | Conspiracy in Violation of 42 U.S.C. § 1983<br>Unlawful Restriction of Plaintiff's Parenting Time |
| 17 | Conspiracy in Violation of 42 U.S.C. § 1983<br>Refusal to Schedule Parenting Time for Plaintiff Even After Minnesota Appellate Courts' Decision |
| 18 | Conspiracy in Violation of 42 U.S.C. § 1983<br>Unlawful Denial of Deduction Due Plaintiff's Child |
| 19 | Intentional Infliction of Emotional Distress and Conspiracy |
| 20 | Negligent Supervision, Training and Discipline by Ramsey County |

Plaintiff Cassell asserts the above claims against the following Defendants:

The "State Defendants" include Ramsey County District Court Administration; Ramsey County Guardian Ad Litem Program; Chief Judge Kathleen Gearin; Judges John T. Finley, Steven D. Wheeler, Edward J. Cleary, M. Michael Monahan, George T. Stephenson, Dale B. Lindman, John Van De North, and Diane Alshouse; Referees Charles H. Williams, Jr. and Mary E. Madden; and Magistrates Brad A. Johnson and Colia F. Ceisel.[1]

Plaintiff Cassell asserts Cause of Action 1 against the Ramsey County District Court Administration. Plaintiff Cassell asserts Causes of Action 1, 4, 7, 8, 10, 11, 12, 13, and 20

---

[1] State Defendants note that Judge John T. Finley is deceased and Judge M. Michael Monahan is retired.

against Defendant Chief Judge Gearin.[2] Plaintiff Cassell asserts Causes of Action 1, 3, 4, 7, 8, 9,

16, 18, and 19 against Defendant Judge Finley.[3] Plaintiff Cassell asserts Causes of Action 1, 3, 4,

7, 8, 9, 10, 14, 15, 16, 17, 18, and 19 against Defendant Judge Wheeler.[4] Plaintiff Cassell asserts

Causes of Action 1, 3, 4, 7, 8, 9, 10, 14, 15, 16, 18, and 19 against Defendant Judge Cleary.[5]

Plaintiff asserts Causes of Action 1, 14, and 19 against Defendant Judges Monahan and

Lindeman.[6] Plaintiff asserts Causes of Action 1, 3, 7, 9, 11, 18, and 19 against Defendant Judge

Stephenson.[7] Plaintiff asserts Causes of Action 1, 10, 14, and 19 against Defendant Judge Van

De North.[8] Plaintiff Cassell asserts Causes of Action 1 and 19 against Defendant Judge

Alshouse.[9] Plaintiff Cassell asserts Causes of Action 1, 3, 4, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18,

---

[2] Plaintiff Cassell asserts Causes of Action 1, 4, and 20 against Defendant Chief Judge Gearin in her individual and official capacities. Plaintiff Cassell asserts Cause of Action 12 against Defendant Chief Judge Gearin in her official capacity.

[3] Plaintiff Cassell asserts Causes of Action 1, 4, 16, 18, and 19 against Defendant Judge Finley in his individual and official capacities. Plaintiff Cassell asserts Causes of Action 3, 7, 8, and 9 against Defendant Judge Finley in his individual capacity.

[4] Plaintiff Cassell asserts Causes of Action 1, 4, 14, 15, 16, 17, 18, and 19 against Defendant Judge Wheeler in his individual and official capacities. Plaintiff Cassell asserts Causes of Action 3, 7, 8, and 9 against Defendant Judge Wheeler in his individual capacity.

[5] Plaintiff Cassell asserts Causes of Action 1, 5, 14, 15, and 16 against Defendant Judge Cleary in his official and individual capacities. Plaintiff Cassell asserts Causes of Action 3, 7, 8, and 9 against Defendant Judge Cleary in his individual capacity.

[6] Plaintiff asserts Causes of Action 1, 14, and 19 against Defendant Judges Monahan and Lindeman in their individual and official capacities.

[7] Plaintiff asserts Causes of action 1, 11, 18, and 19 against Defendant Judge Stephenson in his individual and official capacities. Plaintiff asserts causes of action 3, 7, and 9 against Defendant Judge Stephenson in his individual capacity.

[8] Plaintiff Cassell asserts Causes of Action 1, 14, and 19 against Defendant Judge Van De North in his individual and official capacities.

[9] Plaintiff Cassell asserts Causes of Action 1 and 19 against Defendant Judge Alshouse in her individual and official capacities.

and 19 against Defendant Referee Williams.[10] Plaintiff Cassell asserts Causes of Action 1, 7, 8, 9, 10, 14, 15, 18, and 19 against Defendant Referee Madden.[11] Plaintiff Cassell asserts Causes of Action 1, 3, 7, 9, 11, and 18 against Defendant Magistrate Johnson.[12] Plaintiff Cassell asserts Causes of Action 1 and 18 against Defendant Magistrate Ceisel.[13] Although the Ramsey County Guardian Ad Litem Program[14] is a named Defendant, this Court could not identify any causes of action against it.

The County Defendants include the County of Ramsey, Ramsey County Child Support Enforcement, former Ramsey County Attorney Susan Gaertner, Assistant Ramsey County Attorney Autumn Tomkins, and Joan Fitzgerald. Plaintiff Cassell asserts Causes of Action 1, 3, 4, 7, 8, 10, 11, 12, 18, 19, and 20 against the County of Ramsey.[15] Plaintiff Cassell asserts Cause

---

[10] Plaintiff Cassell asserts Causes of Action 1, 4, 14, 15, 16, 17, 18, and 19 against Defendant Referee Williams in his individual and official capacities. Plaintiff Cassell asserts Causes of Action 3, 7, 8, 9, 10, and 11 against Defendant Referee Williams in his individual capacities.

[11] Plaintiff Cassell asserts Causes of Action 1, 14, 15, 18, and 19 against Defendant Referee Madden in her individual and official capacities. Plaintiff Cassell asserts Causes of Action 7, 8, and 9 against Defendant Referee Madden in her individual capacity.

[12] Plaintiff Cassell asserts Causes of Action 1, 11, and 18 against Defendant Magistrate Johnson in his individual and official capacities. Plaintiff Cassell asserts Causes of Action 3, 7, and 9 against Defendant Magistrate Johnson in her individual capacity.

[13] Plaintiff Cassell asserts Causes of Action 1 and 18 against Defendant Magistrate Ceisel in her individual and official capacities.

[14] Plaintiff lists Guardian Ad Litem Linda Gerr as a Defendant within the text of his Complaint, but she is not a captioned Defendant, she is not named in any of the causes of action, no summons was issued for her, and there is no record that she was ever served with process in this matter.

[15] Plaintiff Cassell sometimes uses the designation of "Ramsey County" interchangeably with the County and State Defendants. Furthermore, Plaintiff Cassell also asserts official capacity claims against non-County Defendants "in their official capacity with respect to Ramsey

of Action 1 against Ramsey County Child Support Enforcement. Plaintiff asserts Causes of Action 1, 4, 7, 8, 10, 11, 12, 13, and 20 against Susan Gaertner.[16] Plaintiff asserts Causes of Action 1, 10, 11, 14, and 15 against Autumn Tomkins.[17] Joan Fitzgerald is not specifically named as a Defendant in any of the claims; but, she is mentioned within the text of Cause of Action 12.

The Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants include Attorney Julie L. La Fleur, Attorney Amanda L. Hagen, and the law firm of Hansen Dordell Bradt Odlaug & Bradt, PLLC.  Plaintiff Cassell asserts Causes of Action 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, and 19 against Defendants La Fleur and Hagen.[18] Plaintiff Cassell asserts Causes of Action 1, 2, 4, 5, 6, 7, and 20 against Defendant law firm.[19]

Plaintiff Cassell asserts Causes of Action 1, 6, 8, 9, 10, 16, 17, and 19 against Defendant Cassell.[20] This Court notes that this is the third litigation that Plaintiff Cassell has commenced in

---

County." This Court has attributed those actions mischaracterized as actions of Defendant Ramsey County with the appropriate Defendant.

[16] Plaintiff Cassell asserts Causes of Action 1, 4, and 20 against Defendant Gaertner in her individual and official capacities; Plaintiff Cassell expressly asserts Causes of Action 7 and 8 against Defendant Gaertner in her individual capacity; and Plaintiff Cassell expressly asserts Cause of Action 12 against Defendant Gaertner in her official capacity.

[17] Plaintiff Cassell asserts Causes of Action 10 and 11 against Defendant Tomkin in her official capacity, and Plaintiff asserts Causes of Action 1, 14, and 15 against Defendant Tomkin in her individual and official capacities.

[18] Plaintiff Cassell asserts Causes of Action 1, 4, and 16 against Defendants La Fleur and Hagen in their individual and official capacities.

[19] Plaintiff Cassell asserts Causes of Action 1 and 4 against Defendant law firm acting in its individual and official capacity. Plaintiff Cassell asserts Cause of Action 7 against Defendant law firm acting in its individual capacity.

[20] Plaintiff Cassell asserts Causes of Actions 1 and 16 against Defendant Cassell in her individual and official capacities. Plaintiff Cassel asserts Causes of Actions 8 and 9 against Defendant Cassell in her individual capacity.

the United States District Court for the District of Minnesota against Defendant Cassell. *See Cassell v. Cassell, et al.*, Civil No. 08-5368 MJD/JJG (D. Minn. Oct. 6, 2008); *Cassell v. Cassell*, Civil No. 09-1112 PJS/AJB (D. Minn. May 13, 2009). All of the Complaints concern an overlapping timeline of events.

Based upon the above Causes of Action, Plaintiff Cassell prays for the following relief: (1) the issuance of an Order and Permanent Injunction that appoints an independent monitor to oversee the Family Division of the Ramsey County District Court, Ramsey County Child Support Enforcement, and the Ramsey County Guardian Ad Litem Program (Compl. at ¶ 423(a)); (2) an Order and Permanent Injunction that enjoins the enforcement of all previously issued orders and judgments in his child-support and -custody proceeding; (3) damages in the amount of $75,000,000.00 (*id.* at ¶ 423(b)); (4) punitive damages to be established at trial (*id.* at ¶ 423(c)); and (5) an award of reasonable and customary costs and expenses. *Id.* at ¶ 423(d).

### b. Procedural Posture

Plaintiff Cassell commenced this action on December 27, 2010. DOCKET NO. 1. The State Defendants filed their Motion to Dismiss on April 5, 2011. DOCKET NO. 6. The County Defendants filed their Motion to Dismiss on April 26, 2011. DOCKET NO. 15. The County Defendants filed an Amended Motion to Dismiss on June 29, 2011. DOCKET NO. 44. The Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants filed their Motion to Dismiss on April 26, 2011. DOCKET NO. 18. The Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants filed an Amended Motion to Dismiss on June 29, 2011. DOCKET NO. 40. Defendant Cassell filed her Motion to Dismiss on June 3, 2011. DOCKET NO. 33. Plaintiff Cassell opposes all of the Motions to Dismiss. DOCKET NOS. 31, 32, 39, 51, and 53.

On July 9, 2011, Plaintiff Cassell filed a Motion to Recover the Costs of Serving the Complaint. DOCKET NO. 54. This Motion will be addressed in a separate Order.

## III.   ANALYSIS

### a.  Standard of Review

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

A complaint should also be dismissed when it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). A complaint that is challenged on a motion to dismiss pursuant to Rule 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). The court must analyze whether the plaintiff has put forth factual allegations that "raise the right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[21] *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. While federal courts must "view *pro se*

___

[21] As a general rule, because a motion to dismiss tests the adequacy of the pleadings, no materials beyond the pleadings can be considered in ruling upon the motion to dismiss without altering the motion to one for summary judgment under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). But, there are exceptions to this rule. When deciding a motion to dismiss the court may consider, in addition to the pleadings, "materials embraced by the pleadings and materials that are a part of the public record." *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F. 3d 1881, 889 (8th Cir. 2002) (quotation omitted); *Piper Jaffray v. Nat'l Union Fire Insur. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (citing *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1198 (D. Minn. 1996)); *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). In the present case because Plaintiff Cassell's claims arise out of a state court's child-support and -custody proceeding, the public records of the state court proceeding are necessarily embraced by the pleadings.

pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Only state actors can be held liable under Section 1983." *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful . . . ." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999) (quotation omitted). "Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005).

### b.  Motion to Dismiss of State Defendants (DOCKET NO. 6)

The State Defendants move to dismiss Plaintiff Cassell's Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, arguing as follows: (1) Plaintiff Cassell's claims for damages and injunctive relief against the State Defendant entities (i.e., Ramsey County District Court Administration and the Ramsey County Guardian Ad Litem Program) and claims for damages against the State Defendant judicial officers in their official capacities are barred by the Eleventh Amendment; (2) Plaintiff Cassell's

claims for damages against the State Defendant judicial officers in their individual capacities are barred by judicial immunity; and (3) Plaintiff Cassell's claims for injunctive relief are precluded by: (a) a lack of standing with respect to other litigants' cases; (b) the unavailability of injunctive relief under § 1983 against state judicial officers; and (c) the *Rooker-Feldman* and the *Younger-*abstention doctrines. For the reasons set forth below, this Court recommends that the State Defendants' Motion to Dismiss be granted, and all claims against the State Defendants be dismissed with prejudice.

### i. Eleventh Amendment

Plaintiff Cassell's claims against Defendant Ramsey County Guardian Ad Litem Program and Defendant Ramsey County District Court Administration, and claims for damages against Defendant Judges, Referees, and Magistrates in their official capacities are suits against the State of Minnesota.  A suit against a state official in his or her official capacity is a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).  A suit against a state agency or department is suit against the State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02, 104 S. Ct. 900, 908 (1984). "[C]ourts as entities" are part of the state. *Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir. 1986). Minnesota's judicial branch is part of the State of Minnesota. Minn. Const. art. VI. The Ramsey County District Court Administration and their employees are part of the judicial branch. Minn. Stat. §§ 43A.02, subd. 25; 480.181, subd. 1(b); 484.68. The Ramsey County Guardian Ad Litem Program and its employees are part of the judicial branch. *Id.* at §§ 43A.02, subd. 25; 480.181, subd. 1; 484.64, subd. 3. Ramsey County is the sole county in the Second Judicial District of the State of Minnesota. *Id.* § 2.722, subd. 1. The Second Judicial District has a family court division. *Id.* at § 484.64. Minnesota state district court judges are state officials. *Id.* at §§ 2.722; 43A.02, subd. 25; 480.181; 484.01. Minnesota state district court referees are state officials. *Id.* at §§ 43A.02, subd.

25; 480.181; 484.70. Minnesota state child-support magistrates are state officials. *Id.* at §§ 43A.02, subd. 25; 480.181; 484.702, subd. 3.

The Eleventh Amendment bars claims against a State for alleged deprivations of civil liberties, unless the State has waived immunity or Congress has overridden that immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-10 (1989). The Eleventh Amendment also bars the federal court from deciding state-law claims against the State. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900, 919 (1984). Application of the Eleventh Amendment divests the federal court of original jurisdiction. *United States v. Metropolitan St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir. 2009).

The State of Minnesota has not waived its Eleventh Amendment immunity, *contra* Minn. Stat. § 1.05 (waiving immunity for violations of other federal statutes), and Congress did not clearly abrogate Eleventh Amendment immunity for claims under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 343, 99 S. Ct. 1139, 1146 (1979) (holding that the Eleventh Amendment shields states from claims under 42 U.S.C. § 1983). Therefore, this Court lacks jurisdiction to consider (1) Plaintiff Cassell's § 1983 claims for damages and injunctive relief against the Ramsey County Guardian Ad Litem Program and the Ramsey County District Court Administration, *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356 (1974) (holding that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"), *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057 (1978) (holding that the Eleventh Amendment bars a claim for injunctive relief against a state and its agency); (2) Plaintiff Cassell's § 1983 claims for damages against Defendant Judges, Referees, and Magistrates in their official capacities, *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n.10, 121 S. Ct. 1835, 1843 n.10 (2001) ("Only States and state officers acting in their official

capacity are immune from suits for damages in federal court."); and (3) Plaintiff Cassell's state-law claims against all the State Defendants.

Plaintiff Cassell argues in his Memorandum of Law (DOCKET NO. 32) that this Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1332, 1343, and 1367. This contention does not change this Court's conclusion. Stating actionable claims under § 1983 and satisfying the requirements of 28 U.S.C. §§ 1332, 1343, or 1367 are separate barriers to litigation and subordinate to the immunities embodied in the Eleventh Amendment of the United States Constitution.

### ii.   Section 1983 "Persons"

Even if the Court had subject-matter jurisdiction, Plaintiff Cassell's Complaint fails to state a § 1983 claim upon which relief can be granted because the Ramsey County Guardian Ad Litem Program, the Ramsey County District Court Administration, and Defendant Judges, Referees, and Magistrates in their official capacities are not "persons" within the meaning of the § 1983. *See Will*, 491 U.S. at 71, 109 S. Ct. at 2312 (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Furthermore, the Ramsey County Guardian Ad Litem Program and the Ramsey County District Court Administration are not legal entities separate from the state and subject to suit under § 1983. *See* Fed. R. Civ. P. 17(b); *Brown v. Fifth Judicial Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001).

### iii.   Absolute Immunity (or Judicial Immunity)

Plaintiff Cassell's Complaint fails to state § 1983 and state-law claims against Defendant Judges, Referees and Magistrates in their individual capacities upon which relief can be granted because they are entitled to absolute immunity.  "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S. Ct. 984, 990 n. 13 (1976); *Glasspoole v. Albertson*,

491 F.2d 1090, 1091 (8th Cir. 1974) (applying judicial immunity to claims brought under 42 U.S.C. § 1983).  Judicial officers are absolutely immune from liability for acts done within their judicial authority, when those acts are not undertaken "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12, 112 S. Ct. 286, 288 (1991).  This means that absolute judicial immunity extends to actions taken in error, *id.*, in *excess* of the judicial officer's authority, *id.*, and in "excess of jurisdiction." *Bradley v. Fisher*, 13 Wall. 335, 351 (1872).  The United States Supreme Court in *Bradley* stated:

> A distinction must be . . . observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the *subject-matter* any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case . . . .[22]

*Id.* at 351-52 (emphasis added).

The State of Minnesota also recognizes absolute immunity for judicial officers. *Hoppe v. Klapperich*, 224 Minn. 224, 234-235, 28 N.W.2d 780, 788 (Minn. 1947) (stating that judicial immunity extends to "all classes of courts," including all officers "who sit as a court"); *see also Drexler v. Walters*, 290 F. Supp. 150, 154 (D. Minn. 1968) (summarizing the Minnesota case law and concluding "Minnesota courts have long recognized the rule that judges and those acting in a judicial or quasi-judicial capacity are immune from civil liability for damages").

---

[22] For example, "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S. Ct. 1099, 1105 (1978) (citing *Bradley*, 13 Wall., at 352.)

Under Minnesota state common law, judicial officers are entitled to absolute immunity for acts done within their judicial capacity, unless the acts were undertaken "[a]bsent all jurisdiction." *Id.* at 235, 28 N.W.2d at 788.

In the present case, all of the acts alleged against the State Defendant judicial officers constitute judicial acts. Reading Plaintiff Cassell's Complaint liberally, this Court identified the following alleged judicial acts that all occurred within the context of the child-support and -custody proceeding[23]: Defendant judicial officers ruled on motions, and signed and entered orders, Compl. at ¶¶ 22-26, 29, 31, 52, 54, 92, 95, 97-103, 15, 106, 108, 109, 158, 181-84, 187, 191-96, 211-14, 217, 223, 224, 249, 253, 254; Defendant judicial officers permitted motions to be filed, *id.* at ¶¶ 85; Defendant judicial officers scheduled hearings, *id.* at ¶¶ 67, 68, 229, 232; Defendant judicial officers held hearings, *id.* at ¶¶ 19, 57, 44, 61-66, 145-55, 174, 247; Defendant judicial officers refused to hold hearings and cancelled hearings, *id.* at ¶¶ 140, 188, 238, 241; Defendant judicial officers required parties to appear in person at hearings, *id.* at ¶ 245; Defendant judicial officers did not have a law clerk present during a hearing, *id.* at ¶ 144; Defendant judicial officers questioned parties at hearings, *id.* at ¶¶ 179, 205; and Defendant judicial officers required payment of a filing fee. *Id.* at ¶ 236. Plaintiff Cassell also alleges that within the context of the child-support and -custody proceeding that Defendant judicial officers disregarded facts, *id.* at ¶¶ 45, 51, 52, 61, 62, 69, 116, 239, 248; ignored the law, *id.* at ¶¶ 52, 53, 72, 107, 154, 173, 189, 190, 204, 206; had *ex parte* contact with the County Defendants and State Defendants, *id.* at ¶¶ 28, 83, 135, 156; failed to respond to letters, *id.* at ¶ 244; and were

---

[23] For ease of presentation, this Court has presented all of the allegations as if they were against all of the State Defendant judicial officers. Plaintiff Cassell's Complaint, in fact, distinguishes between the acts of specific State Defendant judicial officers. Such distinctions, however, do not alter the analysis or conclusions of this Court.

reversed by the Minnesota Court of Appeals. *Id.* at ¶¶ 120-23. These are all judicial acts, or acts that are protected by absolute immunity.

All of the aforementioned alleged acts are not in "clear absence of all jurisdiction over the subject-matter." *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288. Child-support and -custody proceedings are within the subject-matter jurisdiction of the Second Judicial District's family court division. Minn. Stat. § 484.64, subd. 2; *see Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994*)* (holding that "[b]ecause the subject matter of [a judicial officer's] order fell within the ambit of . . . [the judicial officer's] statutory grant of jurisdiction," the judicial officer did not act in the absence of jurisdiction). Even if the child-support and -custody proceeding in question exceeded the jurisdiction of the Second Judicial District's family court division, the proceeding is within the jurisdiction of Minnesota district courts, which have original jurisdiction in all civil cases. Minn. Const. Art. VI; *see also Cummins v. Redman,* 312 Minn. 237, 239, 251 N.W.2d 343, 344 (1977) (noting that Minn. Stat. § 484.64, subd. 2 "hardly creates exclusive jurisdiction").

The fact that Plaintiff Cassell and Defendant Cassell's minor child resided in Anoka County instead of Ramsey County at the time that Defendant Cassell commenced her action in the Second Judicial District's (i.e., Ramsey County's) family court division—a fact that this Court assumes to be true—matters not. Likewise, it does not matter if "material facts support [P]laintiff in his claims that the state's judges committed intentional fraud when they affirmatively claimed that [P]laintiff's minor child resided in the County of Ramsey when the proceedings commenced in November of 2005." DOCKET NO. 32. What matters is that Defendant Judges, Referees and Magistrates sitting in the Second Judicial District of the State of Minnesota all had subject-matter jurisdiction to consider child-support and -custody issues generally and the question of jurisdiction over Plaintiff Cassell's child-support and -custody issues specifically.

Therefore, judicial immunity bars all claims for damages against Defendant judicial officers in their individual capacities.

### iv.  Injunctive Relief

Plaintiff Cassell's Complaint fails to state a § 1983 claim for injunctive relief against Defendant Judges, Referees and Magistrates in their individual capacities upon which relief can be granted. "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff Cassell's Complaint does not identify any declaratory decree that was violated. Furthermore, Plaintiff Cassell offers no argument or allegations that declaratory relief was unavailable. *See Uniform Declaratory Judgments Act*, Minn. Stat. § 555.01 (stating, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed").

"Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Nevertheless, Plaintiff Cassell's claims for injunctive relief against Defendants in their official capacities are barred by the *Rooker-Feldman* and *Younger*-abstention doctrines.

Plaintiff Cassell seeks an injunction appointing an independent monitor to review all of the actions in Ramsey County's family court division in order "to prevent the substantial risk of irreparable injury to other minority Pro Se fathers." Compl. at ¶ 423.  Plaintiff also seeks an order that

> enjoins Ramsey County District Court to immediately vacate all orders and judgments issued against [P]laintiff [Cassell] on ground that they are void because they were issued on fraudulent grounds

and therefore of no legal effect; immediately cease all federal income tax intercept mechanism and all judgment enforcement procedures initiated and sustained against [P]laintiff [Cassell] since the illegal custody and support proceedings were commenced.

Compl. at ¶ 423, xvi.

The Complaint in this matter is fundamentally about Plaintiff Cassell's dissatisfaction with his state court proceedings. The Complaint fundamentally misapprehends the principles of federalism, and in particular, the relationship between the federal and state courts. "The [United States] Constitution presumes the existence of the states as lawmakers and governmental institutions distinct from the federal government." Lawrence H. Tribe, 1 AMERICAN CONSTITUTIONAL LAW § 3-22 (3rd ed. 2000) (citing U.S. Const. Art. IV, § 3; Art. V; amend. X; amend. XI). Thus, the states have their own constitutions, laws, and judges, which are separate and apart from the federal constitution, federal laws, and federal judges.

There are many statutes and holdings that delineate the relationship between federal and state courts, but only a few guiding principles are needed to understand the reason that the United States District Court for the District of Minnesota is not fertile soil for Plaintiff Cassell to sow his claims. While the United States Constitution and other federal laws are the "supreme law of the land," U.S. Const. Art. VI, full faith and credit are given "to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. Art. IV, § 1; 28 U.S.C. § 1738. Thus, federal courts apply the doctrine of *res judicata* to state court judgments under the full faith and credit statute. *See* 28 U.S.C. § 1738. To wit, a federal district court—such as the United States District Court for the District of Minnesota—cannot review a state court's final judgment or decree. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149 (1923). *Only* the United States Supreme Court has appellate jurisdiction over final judgments and decrees of state courts, and

only on matters of federal law.  28 U.S.C. § 1257(a).  There is a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521 (1982); *see generally Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971). With these guiding principles in mind, this Court proceeds to the State Defendants' arguments under the *Rooker-Feldman* and *Younger*-abstention doctrines.

The *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283, 125 S. Ct. 1517, 1521 (2005). Under the *Rooker-Feldman* doctrine, "[a]lthough the state and federal claims may not be identical, impermissible appellate review may occur when a federal court is asked to entertain a claim that is 'inextricably intertwined' with the state court judgment."  *In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir. 1996) (citations omitted).  A federal claim is "inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (quotation omitted).

> The *Younger* abstention doctrine, as it has evolved, provides that federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding. Even if these three requirements are met, a federal court should not abstain if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.

*Plouffe v. Ligon*, 606 F.3d 890, 892-93 (8th Cir. 2010) (citation and quotations omitted).

After commencement of the child-support and -custody proceeding, Plaintiff Cassell appealed to the Minnesota Court of Appeals, seeking review of various orders of the district court entered on or before July 2007 in the child-support and -custody proceeding. *Cassell*, 2008 WL 2651425, at *1-5. The Minnesota Court of Appeals affirmed in part, and reversed and remanded because, among other things, the district court's findings did not support its conclusion that Plaintiff Cassell could pay $412 in child support when his monthly income was $1,648.10, and his monthly expenses were $2,868.82. *Cassell*, 2011 WL 781225, at *1. Following proceedings on remand, Plaintiff Cassell again appealed to the Minnesota Court of Appeals, seeking review of the district court orders, dated May 1, 2010, and July 7, 2010. *Id.* at *2. Plaintiff Cassell filed the present Complaint on December 27, 2010, arising out of actions that occurred between in 2005 through part of 2010. The Minnesota Court of Appeals affirmed the orders in the child-support and -custody proceeding on March 8, 2011. *See generally Cassell*, 2011 WL 781225.

Plaintiff Cassell's sought-after injunctive relief regarding the enforcement of orders and judgments in his child-support and -custody proceeding is *explicitly* and inextricably intertwined with all of the state court orders entered before September 23, 2008, and not appealed; the state court orders entered and affirmed on or before September 23, 2008; and the state court orders entered after September 23, 2008, and not appealed. Plaintiff Cassell's request for injunctive relief asks this Court to review, and overturn, the aforementioned state orders. Thus, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to consider these claims.

Plaintiff Cassell repeatedly asserts that there was fraud on the state district court regarding the basis of the state district court's jurisdiction over the child-support and -custody proceeding, and this claim of fraud-on-state-court precludes the application of the *Rooker-Feldman* doctrine. This Court declines to find such an exception to the *Rooker-Feldman*

doctrine.   First, the Eighth Circuit Court of Appeals declined to adopt a fraud-on-the-court exception to the *Rooker-Feldman* doctrine. *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999); *see also Resler v. Messerli & Kramer, P.A.*, No. Civ. 02-2510 PAM/RLE 2003 WL 193498, at *3 (D. Minn. Jan. 23, 2003) (holding that a claim of fraud committed on the state court, that would nullify the judgment in state court, is barred by the *Rooker- Feldman* doctrine). Second, there is no utility to a fraud-on-the-court exception because Minn. R. Civ. P. 60.02 permits a motion for relief from a final judgment where there was fraud on the state district court. *See also* Minn. R. Family Court P. 377.01 (permitting motions for fraud).

For all of the state court orders entered after September 23, 2008, in Plaintiff Cassell's child-support and -custody proceedings, for which Plaintiff Cassell appealed to the Minnesota Court of Appeals explicitly and by implication, and for the November 5, 2010 levy order, Plaintiff Cassell's sought after injunctive relief involves an ongoing state proceeding.  The state court proceeding in this matter is ongoing to the extent in that the Minnesota Court of Appeals did not render its decision prior to Plaintiff Cassell filing his Complaint. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609, 95 S. Ct. 1200, 1211 (1975) (holding that the *Younger* abstention doctrine applies when "a losing litigant has not exhausted his state appellate remedies"). The Minnesota state courts have an important state interest in the "vindication of important state policies [and] for the functioning of the state judicial system." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521 (1982). Furthermore, Plaintiff Cassell has not alleged or shown that he was barred from raising his federal constitutional challenges in the state court proceeding.  Furthermore, there has been no showing of bad faith, harassment, or other extraordinary circumstances; the underlying child-support and -custody proceedings were initiated by other Defendants and Plaintiff Cassell has

already had certain rights vindicated on appeal. Thus, this Court should abstain from exercising jurisdiction over these claims.

Finally, based on the foregoing, Plaintiff Cassell lacks standing to pursue his claim for injunctive relief on behalf of third party minority pro se fathers. Cases such as the one before the Court present two distinct standing questions:

> First, whether [a] plaintiff[] allege[s] 'injury in fact,' that is, a sufficiently concrete interest in the outcome of [his] suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether, as a prudential matter, [a] plaintiff[] [is the] proper proponent[] of the particular legal rights on which [he] base[s] [his] suit.

*Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873 (1976). First, Plaintiff Cassell's Complaint does not allege any facts to support an injury in fact by *pro se* minority fathers generally. Second, Plaintiff Cassell has made no allegation or showing that third party *pro se* minority fathers cannot assert their own rights. *Irving v. Clark*, 758 F.2d 1260, 1267 (8th Cir. 1985).

### v. Supervisory Defendant

Plaintiff asserts that Defendant Chief Judge Gearin is liable as a "Supervisory Defendant." "To hold supervisors liable under § 1983, a plaintiff must show that a superior had actual knowledge that [her] subordinates caused deprivations of constitutional rights and that [s]he demonstrated deliberate indifference or 'tacit authorization' of the offensive acts by failing to take steps to remedy them." *Pool v. Missouri Dept. of Corrections and Human Resources*, 883 F.2d 640, 645 (8th Cir. 1989). Assuming that Defendant Chief Judge Gearin is, in fact, a supervisor of any of the State Defendants, Plaintiff Cassell cannot—for the reasons set forth above—maintain a claim that any other State Defendants deprived him of his constitutional

rights. Therefore, any claims against Defendant Chief Judge Gearin in her supervisory capacity should likewise be dismissed.

### c.  County Defendants' Motions to Dismiss (DOCKET NO. 15 and 44)

The County Defendants move to dismiss Plaintiff Cassell's Complaint, arguing this Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. For the reasons set forth below, this Court recommends that the County Defendants' motion be granted and Plaintiff Cassell's Complaint against the County Defendants' be dismissed with prejudice.

The *Rooker-Feldman* doctrine is set forth in general terms above. In contrast to the discussion above, the County Defendants did not issue any orders or enter any judgments. Nevertheless, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Christ's Household of Faith v. Ramsey County*, 618 F.Supp. 2d 1040, 1044 (D. Minn. 2009) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir.2005)). Thus, a challenge to the enforcement of an order under § 1983 is a challenge to the order itself and is barred by the *Rooker-Feldman* doctrine. *Id.* at 1047.

All of the actions alleged against the County Defendants occurred after the state district court issued its support obligation order determining that Plaintiff Cassell was responsible for $412 per month to be collected through income withholding. Compl. at ¶ 24. The County Defendants thereafter initiated income withholding, *id.* at ¶¶ 30, 75, 103, 195, 253, 254; appeared and argued at hearings related to Plaintiff's ordered support obligation, *id.* at ¶¶ 49, 57, 63, 73, 150, 151, 153, 154, 200; conferred with the Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants, *id.* at ¶¶ 134, 135; and administered income withholding following the first

Minnesota Court of Appeal's decision. *Id.* at ¶¶ 124-31, 136, 137. Thus, all of the alleged acts by the County Defendants were pursuant to the initial support obligation order.[24]

The present case is analogous to *Christ's Household of Faith v. Ramsey County*, 618 F.Supp.2d 1040. That case followed a state district court action where Christ's Household of Faith (CHOF) was ordered to pay child support to the former spouse of one of its members. *Id.* at 1042. Ramsey County was authorized by state statute to assist the former spouse with the collection of support payments and undertook to do the same. *Id.* CHOF brought a § 1983 action in the United States District Court for the District of Minnesota, asserting claims that (1) Ramsey County's enforcement of the state district court order violated federal law and (2) Ramsey County violated various rights of CHOF under the United States Constitution. *Id.* at 1042-43. The Honorable Michael J. Davis, Chief District Court Judge, held that CHOF was "attempt[ing] to perform an end run around the state court's decision" and, therefore, CHOF's federal action was barred by the *Rooker-Feldman* doctrine. *Id.* at 1044. Chief Judge Davis held that the *Rooker-Feldman* doctrine applied because "[Ramsey County] would have no obligation to act in a manner adverse to CHOF's allege interests" *but for* the state court judgment; therefore, to challenge Ramsey County's enforcement of the judgment is to challenge the validity of the judgment itself. *Id.* at 1047. The same application of the *Rooker-Feldman* doctrine applies in the present case and, thus, the same conclusion applies.

Plaintiff Cassell's Memorandum of Law (DOCKET NO. 53) in opposition to the County Defendants' Motions to Dismiss only supports this Court's conclusion. As Plaintiff Cassell states: "Plaintiff's Complaint is nothing more than an attempt to move Ramsey County to prove its claim of authority over Plaintiff." Pl.'s Mem. at 1, July 8, 2011; *see also id.* at 2 (stating that

---

[24] None of these allege acts support an allegation of conspiracy between the County Defendants and any other Defendants in this matter. *See infra* § III.d.i.

Plaintiff Cassell's "Complaint is NOT claiming that the state court erred in its decisions; Plaintiff is claiming that the state court's exercise of jurisdiction is illegal because it was procured by fraud and usurpation of authority"). As stated above, Ramsey County's "claim of authority" is pursuant to the order determining that Plaintiff Cassell was responsible for $412 per month to be collected through income withholding. Therefore, to challenge the County Defendants' claim of authority is to challenge the order they acted under.

Finally, based upon the reasoning set forth with respect to Defendant Chief Judge Gearin, this Court recommends that all claims against Defendant County Attorney Susan Gaertner in her supervisory capacity be dismissed.

### d. Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants' Motions to Dismiss (DOCKET NO. 18 and 40)

The Hansen Dordell Bradt Odlaug & Bradt, PLLC Defendants (Hansen Dordell Defendants) move to dismiss Plaintiff Cassell's Complaint, arguing (1) Plaintiff Cassell has failed to allege facts to support a § 1983 claim upon which relief can be granted; (2) Plaintiff Cassell has failed to state a § 1983 claim upon which relief can be granted because the Hansen Dordell Defendants are entitled to immunity; (3) Plaintiff Cassel has failed to state a state-law claim upon which relief can be granted; (4) this Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* and the *Younger*-abstention doctrines; and (5) Plaintiff Cassell's claims are barred by the collateral attack doctrine. For the reasons set forth below, this Court recommends that the Hansen Dordell Defendants' Motions to Dismiss be granted, and all claims against the Hansen Dordell Defendants be dismissed with prejudice.

i.  *Section 1983*

Plaintiff Cassell's § 1983 claim fails because he did not put forth factual allegations that "raise the right to relief above the speculative level" that the Hansen Dordell Defendants acted in their individual capacity "under the color of law." *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. As stated earlier, "[o]nly state actors can be held liable under Section 1983." *Carlson*, 552 F.3d at 650. "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997). The conspiracy must be pleaded with "sufficient specificity and factual support." *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). An allusion to a conspiracy is inadequate. *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (affirming dismissal of § 1983 claim against defendant attorney premised on a conspiracy between defendant attorney and prosecutor).

In *DuBose v. Kelly*, the Eighth Circuit Court of Appeals held that a plaintiff had presented prima facie evidence of a "mutual understanding" where the private attorneys and the judge in plaintiff's state court proceeding allegedly made specific *ex parte* statements and those specific statements supported the inference that there was an agreement between the private attorneys and the judge to "fix" the trial. 187 F.3d 999, 1003 (8th Cir. 1999).  But, in reaching its conclusion, the Eighth Circuit Court of Appeals noted that a "meeting of minds" cannot be inferred from *mere* "display[s] of cordiality" and "ex parte contact" between a private attorney and a judge, unless such acts are truly "serious." *Id.* Consistent with that cautionary note, the Eighth Circuit Court of Appeals has held in other instances that a private attorney's acts of representing a client, bringing a cause of action, filing motions and memoranda, and offering evidence do not show a requisite state action, *Carlson*, 552 F.3d at 650; *Holbird*, 949 F.2d at 1020; a private attorney's act of providing information to a government agency does not

constitute state action, *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir.1997); a private attorney's "misuse of a statute," including filing false affidavits in support of relief, does not show state action, *Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1129 (8th Cir. 1988); and evidence of unfavorable judicial rulings falls short factually of suggesting any mutual understanding or "meeting of the minds" in any conspiracy between the state court and a private attorney. *Deck*, 771 F.2d at 1170; *Dotlich v. Kane*, 497 F.2d 390, 391 (8th Cir. 1974). It is for all of the aforementioned reasons that the Eighth Circuit Court of Appeals has affirmed the dismissal of § 1983 claims against private attorneys who practiced in family law matters. *See Harley v. Oliver*, 539 F.2d 1143, 1145-46 (8th Cir. 1976); *Glasspoole*, 491 F.2d at 1091.

Reading Plaintiff Cassell's Complaint liberally, this Court has identified the alleged acts by the Hansen Dordell Defendants. All of the alleged acts occurred within the context of the child-support and -custody proceeding. These alleged acts are as follows[25]: the Hansen Dordell Defendants filed and commenced the proceedings, Compl. at ¶¶ 10, 11, 15, 22; they had the summons and petition served on Plaintiff Cassell, *id.* at ¶ 12; they attempted to negotiate stipulations and settlement, *id.* at ¶¶ 12-14, 33, 34, 38, 143, 178; they scheduled a hearing, *id.* at ¶ 19; they attended hearings and represented Defendant Cassell, *id.* at ¶¶ 20, 44, 64, 65, 92, 145, 146, 148, 151-54, 198, 222, 223; they sent letters, motions, and proposed orders to the court, *id.* at ¶¶ 56, 84, 89, 8 114, 139, 142, 156, 157, 163, 164, 171, 172, 172, 176, 177, 230, 233, 234, 235; they drafted affidavits, *id.* at ¶ 60; they submitted fraudulent evidence or threatened to submit fraudulent evidence, *id.* at ¶¶ 27, 43, 45, 50, 51, 58, 59, 66, 86, 90, 169, *see also* 166-68, 179, 203; they spoke with Plaintiff Cassell on the telephone, *id.* at ¶¶ 17, 37; they refused to speak with Plaintiff Cassell via telephone or e-mail, *id.* at ¶ 39; they wrote letters to Plaintiff

---

[25] For ease of presentation, this Court has presented all of the allegations as if they were against all of the Hansen Dordell Defendants. Plaintiff Cassell's Complaint, in fact, distinguishes between the acts of specific Hansen Dordell Defendants.

Cassell, *id.* at ¶¶ 74, 75, 78, 79, 80, 160-62; they e-mailed Plaintiff Cassell, *id.* at ¶ 77; they contacted witnesses, *id.* at ¶ 82; they stalled proceedings so that Plaintiff Cassell would miss his filing deadline, *id.* at 40; they contacted the Ramsey County Attorney's office, *id.* at ¶ 134-35; they contacted the guardian ad litem, *id.* at ¶ 182; they advised Defendant Cassell, *id.* at ¶¶ 110-12; and they withdrew as counsel for Defendant Cassell, *id.* at ¶¶ 210, 243. In addition, Plaintiff Cassell alleges that Defendant LaFleur was previously employed as a clerk with Ramsey County, *id.* at ¶ 48, 49; the Hansen Dordell Defendants chose the referee, *id.* at ¶¶ 60, 68; the Hansen Dordell Defendants engaged in *ex parte* contact with the judicial officers, *id.* at ¶¶ 28, 83, 135, 158; and the Hansen Dordell Defendants issued decisions, *id.* at ¶¶ 21, 25, 26.

This Court concludes that none of these allegations rise to the level of "sufficient specificity and factual support" to support that the Hansen Dordell Defendants were anything more than private actors in this matter. *Deck*, 771 F.2d at 1170.   Most of the aforementioned allegations concern private, tactical acts undertaken during the normal course of representation. Plaintiff Cassell's allegations of conspiracy between the Hansen Dordell Defendants and the County Defendants are without factual support and merely conclusory.  Three acts by the Hansen Dordell Defendants with respect to the State Defendants warrant brief discussion. First, the act of being a former law clerk for a particular jurisdiction is insufficient to suggest any mutual understanding or "meeting of the minds" between the former law clerk who is now in private practice and judicial officers within such jurisdiction. Second, the alleged act of "handpicking" the judicial officer who presides over a case is insufficient to suggest a mutual understanding or "meeting of the minds" between a private "handpicking" attorney and the "handpicked" judicial officer where there is no corresponding allegation that the judicial officer entered into any form of corrupt agreement when so "handpicked." Likewise, common sense dictates that a referee can scarcely be said to be "handpicked" because under Minnesota Statute 484.70, subdivision 6,

"[n]o referee may hear a contested trial, hearing, motion or petition if a party or attorney for a party objects in writing to the assignment of a referee to hear the matter." Finally, the conclusory allegation that private attorneys somehow decided issues in conjunction with a judicial officer falls far short of "sufficient specificity and factual support." *Deck*, 771 F.2d at 1170.

The Hansen Dordell Defendants also argue that Plaintiff Cassell failed to state a § 1983 claim upon which relief can be granted because he has not alleged that the Hansen Dordell Defendants' actions deprived Plaintiff Cassell of a federal right. The Hansen Dordell Defendants are correct with respect to Causes of Action 2, 5, and 6. These Causes of Action do not name any state actors as co-conspirators.  But, reading the Complaint liberally, the remaining Causes of Action against the Hansen Dordell Defendants would constitute actionable claims under § 1983, but for the fact that Plaintiff Cassell has failed to allege facts to support that the Hansen Defendants were acting "under the color of law." As the United States Supreme Court has said,

> [a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.

*In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625 (1955).

Plaintiff Cassell's Causes of Action 1, 4, 7, 8, 9, 10, 11, 14, 15, 16, 17, and 18 are fundamentally one cause of action premised on the corruption of judicial proceedings as described by the United States Supreme Court. This is not to say that everything alleged under these Causes of Action constitutes an allegation of deprivation of a federal right. To be sure, much of what is alleged under these Causes of Action is frivolous.  Much of what is alleged under these Causes of Action in no way could deprive Plaintiff Cassell of a constitutional right or is based only upon violations of state law.  Finally, much of what is alleged is premised on the

misguided notion that the Hansen Dordell Defendants could somehow render legal decisions and judgments. If this Court entertained the proposition that the Hansen Dordell Defendants could issue orders and judgments, then Plaintiff Cassell's claims would be barred by the *Rooker-Feldman* and *Younger*-abstention doctrines. But, this would require the application of valid holdings to nonsensical, speculative allusions.

Causes of Action 1, 4, 7, 8, 9, 10, 11, 14, 15, 16, 17, and 18 contain the fundamental allegation of a conspiracy between state officials and the Hansen Dordell Defendants to corrupt judicial proceedings by preventing Plaintiff Cassell from arguing his claims, purposefully misapplying state law, or entering unfavorable orders and judgments. The alleged corruption of the proceedings would constitute a claim based upon a deprivation of Plaintiff Cassell's federal rights, *but for the fact that Plaintiff Cassell has failed to allege facts to support that the Hansen Defendants were acting "under the color of law."*

ii. *The Rooker-Feldman and Younger-Abstention Doctrines*

This Court has jurisdiction to consider Plaintiff Cassell's claims against the Hansen Dordell Defendants. The Hansen Dordell Defendants misapprehend the *Rooker-Feldman* and *Younger*-abstention doctrines' application in the present action.   The *Rooker-Feldman* and *Younger*-abstention doctrines applied to the State Defendants by virtue of the relief Plaintiff Cassell sought.   Plaintiff Cassell does not seek injunctive relief against the Hansen Dordell Defendants.   The *Rooker-Feldman* doctrine applied to the County Defendants because their actions giving rise to the claims against them were pursuant to the orders of the State Defendants.   The Hansen Dordell Defendants did not undertake any of their alleged acts pursuant to any orders issued by the State Defendants.

Although Plaintiff Cassell complains that the Hansen Dordell Defendants' actions resulted in unfavorable rulings and ultimately unfavorable judgments, this Court's consideration

of Plaintiff Cassell's claims against the Hansen Dordell Defendants does require this Court determine the merits of those decisions. *See DuBose*, 187 F.3d at 1003 (holding that consideration of whether a plaintiff's § 1983 claims against private attorney defendants who conspired with the judicial officer to "fix" the plaintiff's trial did not "depend upon whether the result of [the plaintiff]'s trial would have been the same without corruption, or whether all of the rulings made by [the j]udge . . . at the request of . . . [the] attorneys were correct when viewed in hindsight"). Private attorneys do not create judgments even if they conspire with the judge to enter a specific judgment. Thus, as to the private attorneys who conspire with judges, the act of conspiracy to corrupt the judicial proceedings gives rise to the § 1983 claim, not any ruling or judgment that results from the conspiracy. Conversely (and probably much to Plaintiff Cassell's chagrin) a hypothetical finding of liability against the Hansen Dordell Defendants by this Court would in no way nullify those state court judgments that were obtained unlawfully absent further proceedings in state court. Likewise, for the reasons set forth above, the Hansen Dordell Defendants' arguments premised on the collateral attack doctrine are also unavailing.

### iii.   *State Law Claims*

Plaintiff Cassell asserts two explicit state law claims: "intentional infliction of emotional distress and conspiracy," Compl. at *Cause of Action 19*, and "negligent supervision, training and discipline by Ramsey County." *Id.* at *Cause of Action 20*. Plaintiff Cassell also seems to assert claims of fraud, *id.* at Causes of Action 2, 4, 5, and defamation. *Id.* at *Causes of Action* 7. For the reasons set forth herein, this Court recommends that Plaintiff Cassell's state law claims also be dismissed with prejudice.

To the extent that Plaintiff Cassell asserts a claim of intentional infliction of emotional distress, his claim fails. "Intentional infliction of emotional distress consists of four distinct elements: '(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional

or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003) (quoting Hubbard, 330 N.W.2d at 438-39). None of the alleged acts by the Hansen Dordell Defendants discussed constitute extreme or outrageous conduct.

To the extent that Plaintiff Cassell asserts an independent claim of conspiracy, he fails to state a claim upon which relief can be granted. "Accurately speaking, there is no such thing as a civil action for conspiracy under Minnesota law. Rather, a civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability, and hence such a 'claim' is dependent upon a valid underlying tort claim." *Cenveo Corp. v. Southern Graphic Systems, Inc.*, __ F. Supp. 2d __, __, 2011 WL 1134969, at *3 (D. Minn. Mar. 25, 2011).

To the extent that Plaintiff Cassell asserts a claim of negligent supervision, training, and discipline by Ramsey County against the Hansen Dordell Defendants, that claim is frivolous and without merit.

To the extent that Plaintiff Cassell asserts a fraud claim against the Hansen Dordell Defendants, Plaintiff Cassell has failed to allege facts to support a claim upon which relief can be granted.  Plaintiff Cassell has not alleged any facts to satisfy the reliance element of fraud. *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992).

To the extent that Plaintiff Cassell has asserted a defamation claim against the Hansen Dordell Defendants, his claim fails because a "defamatory matter published in the due course of a judicial proceeding is absolutely privileged." *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954); *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007).

Finally, to the extent that any of Plaintiff Cassell's claims are premised upon alleged violations of the Minnesota Rules of Professional Conduct, Plaintiff Cassell has failed to state a claim upon which relief can be granted.  Minnesota state courts "have long held that a violation

of the Rules of Professional Conduct cannot give rise to a private cause of action against an attorney." *Lennartson v. Anoka-Hennepin Independent School Dist. No. 11*, 662 N.W.2d 125, 136 (Minn. 2003). Likewise, Minn. Stat. §§ 481.07 and 481.071 provide penalties for attorneys who commit acts of deceit or collusion; but, these statutes do not give Plaintiff Cassell private causes of action. *Love v. Anderson*, 240 Minn. 312, 316, 61 N.W.2d 419, 422 (1953).

### e.  Motion to Dismiss of Defendant Olivia Cassell (DOCKET NO. 33)

Defendant Cassell moves to dismiss Plaintiff Cassell's Complaint, arguing that Plaintiff Cassell has failed to state a § 1983 claim against her upon which relief can be granted because Plaintiff Cassell failed to allege facts to support that Defendant Cassell acted "under the color of law" and deprived Plaintiff Cassell of a right secured by federal law. 42 U.S.C. § 1983. Defendant Cassell also argues that Plaintiff Cassell's Complaint should be dismissed as frivolous under 28 U.S.C. § 1915.  For the reasons set forth below, this Court recommends that Defendant Cassell's motion be granted and Plaintiff Cassell's Complaint against Defendant Cassell be dismissed with prejudice.

Plaintiff Cassell alleged that Defendant Cassell moved from Ramsey County to Anoka County, Compl. at ¶¶ 6-8; commenced the child-support and -custody proceeding, *id.* at ¶¶ 10-11; signed affidavits, *id.* at ¶¶ 43, 45, 58, 60; submitted false evidence to the state district court, *id.* at ¶¶ 51, 202; received advice from her attorneys, *id.* at ¶¶ 110, 160, 161; obtained *in forma pauperis* status, *id.* at ¶ 119; communicated with the guardian ad litem, *id.* at ¶ 220; and appeared pro se. *Id.* at ¶ 247. Plaintiff Cassell also stated repeatedly that the Hansen Dordell Defendants were acting on Defendant Cassell's behest.  Plaintiff Cassell also generally alleges that Defendant Cassell conspired with state actors to deprive Plaintiff Cassell of his rights under federal law.

Like attorneys, former spouses generally do not act under the color of state law by engaging in judicial proceedings against each other. *See Glasspoole*, 491 F.2d at 1091-92; *see also Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (stating that a private litigant acting unlawfully is not a state actor under § 1983). All of the facts alleged by Plaintiff Cassell only support that Defendant Cassell was a private litigant and not a state actor. Plaintiff Cassell cannot be held liable under § 1983 for any actions undertaken by her attorneys. *See Bell v. Kansas City Police Dept.*, 635 F.3d 346, 347 (8th Cir. 2011) (holding *respondeat superior* is inapplicable to claims under 42 U.S.C. § 1983). Plaintiff Cassell has not alleged any facts to support that there was a mutual understanding or meeting of minds between the Defendant Cassell and any state actor. *Miller*, 122 F.3d at 1098; *Deck*, 771 F.2d at 1170. Therefore, Plaintiff Cassell has failed to state a § 1983 claim against Defendant Cassell upon which relief can be granted.

For the reasons set forth above with regard to the Hansen Dordell Defendants, Plaintiff Cassell's state law claims against Defendant Cassell should also be dismissed. Furthermore, for all of the reasons set forth herein, this Court concludes that Plaintiff Cassell's Complaint against Defendant Cassell is frivolous and malicious.  Plaintiff's pleading as to Defendant Cassell does not come close to asserting meritorious claims.[26]  Therefore, in addition to failing to state a claim

---

[26] In addition to those arguments briefed by the parties, it appears that the claims against Defendant Cassell should also be dismissed on the grounds of res judicata.

> To establish that a claim is barred by res judicata a party must show: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.

*Yankton Sioux Tribe v. U.S. Dept. of Health and Human Services*, 533 F.3d 634, 639 (8th Cir. 2008) (quotations omitted).  Plaintiff Cassell commenced an action against Defendant Cassell for alleged defamatory statements made in connection with the child-support and -custody

upon which relief can be granted, Plaintiff Cassell's Complaint against Defendant Cassell should be dismissed pursuant to 28 U.S.C. 1915(e)(2)(B)(i).

## IV.    RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motions to Dismiss (DOCKET NOS. 6, 15, 18, 33, 40, and 44) be **GRANTED**;

2. Plaintiff's Complaint (DOCKET NO. 1) be **DISMISSED WITH PREJUDICE**; and

3. The Clerk of Court be ordered to **ENTER JUDGMENT ACCORDINGLY**.


Dated: November 2, 2011

*s/ Tony N. Leung*
Magistrate Judge Tony N. Leung
United States District Court


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **November 17, 2011**.

---

proceeding.  *Cassell*, Civil No. 09-1112 PJS/AJB (D. Minn. May 13, 2009). Plaintiff Cassell's Complaint in that action was dismissed on the merits and judgment was entered on November 17, 2010. *Id.* Plaintiff Cassell commenced the present action on December 27, 2010. In the present action Plaintiff Cassell alleged no acts by Defendant Cassell after May 13, 2009.